FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KARA SANDLER, an individual,

*Plaintiff - Appellee*,

v.

MODERNIZING MEDICINE, INC., a Delaware Corporation,

*Defendant - Appellant*.

No. 24-6623

D.C. No. 3:24-cv-00812-AJB-BJC

OPINION

Appeal from the United States District Court for the Southern District of California Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted February 13, 2026 Pasadena, California

Filed March 19, 2026

Before: Richard C. Tallman, Lawrence VanDyke, and Eric C. Tung, Circuit Judges.

Opinion by Judge Tung

# SUMMARY[*]

## Arbitration

The panel reversed the district court's judgment denying a motion to compel arbitration, vacated the judgment that the parties' arbitration agreement was unconscionable, and remanded with instructions to grant the motion to compel arbitration.

The employment contract between the parties specified that any employment-related disputes be subject to arbitration under the Federal Arbitration Act in conformity with the procedures of the California Arbitration Act. The district court acknowledged that the arbitration agreement delegated the question of the agreement's validity to an arbitrator to decide. The district court ruled, however, that where the contract contained a severability clause permitting a court to excise an unconscionable provision, the delegation clause did not constitute a clear and unmistakable delegation and thus could not be enforced.

The panel held that the district court misapplied federal law and erroneously relied on state-court decisions pointing to the existence of a severability clause to refuse to compel arbitration. The parties clearly and unmistakably agreed to have the arbitrator resolve any challenge to the validity of the arbitration agreement. The clear and unmistakable nature of the delegation was not negated by the presence of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

a severability clause. The panel rejected the district court's attempt to adopt a state rule that disfavored arbitration here.

The panel also vacated the district court's judgment that the parties' arbitration agreement was unconscionable. The district court should not have addressed the issue in the first place, but instead should have enforced the delegation clause requiring an arbitrator's resolution.

The panel remanded to the district court with instructions to grant the motion to compel arbitration and to stay the case pending the completion of arbitration proceedings.

---

**COUNSEL**

Jenna M. Rangel (argued) and Amber L. Eck, Haeggquist & Eck LLP, San Diego, California, for Plaintiff-Appellee.

Leslie G. Sanders (argued), Barton LLP, Nashville, Tennessee; Bernard M. Resser, Barton LLP, Santa Monica, California; for Defendant-Appellant.

**OPINION**

TUNG, Circuit Judge:

Many contracts require that disputes be resolved by arbitration. Some contracts go further—delegating to an arbitrator (rather than a court) the power to resolve whether an arbitration agreement is valid in the first place. This case asks whether such a delegation can be defeated merely because another clause in the contract says that "*a court* or other body of competent jurisdiction" can sever provisions found to be invalid—with the reference to "a court" suggesting, as the argument goes, that the parties might not have intended to have an arbitrator resolve the question of validity. We hold that the answer is no. Because the delegation clause here clearly and unmistakably reserves to the arbitrator the power to resolve the question of an arbitration agreement's validity, the clause should be respected. The presence of a severability clause does not render the delegation clause unenforceable. We reverse the district court's judgment to the contrary.

**I.**

The employment contract between Plaintiff Kara Sandler and her employer Defendant Modernizing Medicine (ModMed) specifies that any employment-related disputes "shall be subject to binding arbitration under the Federal Arbitration Act in conformity with the procedures of the California Arbitration Act." ER 34. The contract also states that the arbitration shall be administered by JAMS (or Judicial Arbitration & Mediation Services, Inc.), whose rules in turn say that an arbitrator must resolve questions of whether the contract itself (including the agreement to arbitrate) is valid and enforceable. ER 35 ("I agree that any

arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. ('JAMS'), pursuant to its Employment Arbitration Rules [and] Procedures (the 'JAMS Rules') and can be found at www.jamsadr.com"); ER 55 (JAMS Rule 11: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.").

Sandler sued ModMed in federal court. She alleged a variety of state- and federal-law claims, accusing ModMed of discriminating against her on the basis of age and disability. ModMed moved to compel arbitration. Sandler opposed it, contending that the arbitration agreement was unconscionable.

The district court agreed with Sandler and denied ModMed's motion. The district court acknowledged that the arbitration agreement, which incorporated the JAMS rules, delegated the question of the agreement's validity to an arbitrator to decide. ER 7–8. But the district court, relying on state court decisions, ruled that, where (as here) "a contract includes a severability clause" permitting a "court or other body of competent jurisdiction" to "excise an unconscionable provision," the delegation clause did not constitute a clear and unmistakable delegation and thus could not be enforced. ER 8–9 (citations omitted); *see also* ER 36–37 (Severability Clause: "If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this [Employment] Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to

effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.").

Holding that a court (not an arbitrator) must decide whether the arbitration agreement is valid, the district court proceeded to answer that question, ruling that the agreement was unconscionable and refusing to sever the unconscionable provisions from the arbitration agreement. ER 9–18. ModMed appealed.

## II.

We have jurisdiction under 9 U.S.C. § 16(a)(1). We review de novo the denial of a motion to compel arbitration, as well as the "interpretation and meaning of contract provisions." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017).

The Federal Arbitration Act was passed to counteract the "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As required by the Act, courts "must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). The enforcement of the arbitration agreement here is governed by the Act, as the parties and the district court acknowledge.

Who gets to decide the arbitration agreement's validity—an arbitrator or a court—depends on whether there is "clear and unmistakable" evidence that the parties agreed to delegate the validity question to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If there is such evidence, then the arbitrator has the power to resolve that question of "arbitrability."

That standard is met here. The parties clearly and unmistakably agreed to have the arbitrator resolve any challenge to the validity of the arbitration agreement. The agreement incorporates the JAMS rules, which delegate the question of the agreement's validity to the arbitrator. That incorporation, we have held, evinces a "clear and unmistakable" intent to delegate. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) ("Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").

The clear and unmistakable nature of the delegation is not negated by the presence of a severability clause. Many contracts, including this one, contain a generic severability clause that authorizes a court or other body of competent jurisdiction to sever provisions that are deemed unconscionable or otherwise unenforceable. Such a severability clause does not conflict with the clear and unmistakable delegation to an arbitrator to resolve questions of the arbitration agreement's validity. Nor does the severability clause render the delegation ambiguous. The reference to a "court" in a severability clause does not mean that the parties did not agree to have an arbitrator decide questions about an agreement's validity; all it means is that, in the event that a court were to interpret the contract (as the court did here, whether or not it had the authority to do so), severance would be permitted. Two things can be true at once: First, parties can agree that disputes (including disputes over the validity of the arbitration agreement) shall

be heard by an arbitrator.   Second, the parties can nevertheless agree on a contingency—*if* a court somehow reaches (as it did here) the enforceability of contractual provisions, the severability clause tries to ensure that any invalidation would be limited.  In any event, the severability clause does not refer just to a "court"; it refers also to *another* "body of competent jurisdiction," which includes an arbitral forum.   Simply put, the severability clause and the delegation clause are not at odds; both can be given effect.

This conclusion follows from the "cardinal principle of contract construction" that clauses should be rendered "consistent with each other."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).  Adopting Sandler's (and the district court's) interpretation here would allow the severability clause to "swallow up" the delegation clause and "result in a contradiction between two clauses of the contract."  *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 566 (9th Cir. 1988); *see also* Restatement (Second) of Contracts § 202(5) (A.L.I. 1981) ("Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other[.]"); 11 Williston on Contracts § 32:5 (4th ed.) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.").   Nor is otherwise clear and unmistakable language in the delegation clause made "ambigu[ous] because another clause" refers to a "court."  *Trident Ctr.*, 847 F.2d at 566.  The delegation clause is clear, and a generic severability clause does not vitiate that clarity.

The district court's reliance on state-court opinions purporting to apply *state* law to negate a delegation clause is legal error.   Whether the parties manifested a clear and

unmistakable intent to delegate arbitrability to an arbitrator is a question of *federal* law. "[F]ederal law governs the arbitrability question by default because the Agreement is covered by the FAA[.]" *Brennan*, 796 F.3d at 1129 (rejecting an argument that California law applied). It is true that "ordinary state-law principles" usually "govern the formation of contracts." *First Options*, 514 U.S. at 944. But the Supreme Court has "added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability," *id.*—a question controlled by federal (not state) law. Other circuits are in accord that federal law applies. *See, e.g.*, *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846–47 (6th Cir. 2020). The district court thus erred in allowing state-court cases (purporting to apply state law) to dictate the outcome here.

The reason for the application of federal law is clear. The "clear and unmistakable" standard is an arbitration-specific rule. To have state law (rather than federal law) control the content of that rule in a way that disfavors arbitration would subject it to FAA preemption. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017); *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018). Accordingly, state rules announced by state courts holding that a severability clause negates an otherwise clear delegation would be preempted if applied to contracts subject to the FAA.[1] Courts "adopt[ing] [such] a legal rule

---

[1] *See, e.g.*, *Jack v. Ring*, 91 Cal. App. 5th 1186, 1197–1201 (2023); *Najarro v. Superior Ct.*, 70 Cal. App. 5th 871, 880–82 (2021); *Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204, 209–10 (2020); *Hartley v. Superior Ct.*, 196 Cal. App. 4th 1249, 1254–58 (2011); *Parada v.*

hinging on the primary characteristic of an arbitration agreement" would be doing "exactly what *Concepcion* barred." *Kindred Nursing*, 581 U.S. at 252. We reject the district court's attempt to adopt a state rule that disfavors arbitration here.

## III.

For the reasons discussed, we reverse the district court's judgment denying the motion to compel arbitration. The district court misapplied federal law and erroneously relied on state-court decisions pointing to the existence of a severability clause to refuse to compel arbitration. We also vacate the district court's judgment that the parties' arbitration agreement is unconscionable; the district court should not have addressed this issue in the first place, but instead should have enforced the delegation clause requiring an arbitrator's resolution. We remand the matter to the district court with instructions to grant the motion to compel and to stay the case pending the completion of arbitration proceedings.

**REVERSED AND REMANDED.**

---

*Superior Ct.*, 176 Cal. App. 4th 1554, 1565–66 (2009); *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 893–94 (2008).